**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KHALID AWAN,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:17-CV-130-C (BH)** |
| | ) | |
| **DJ HARMON, Warden (Seagoville), et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the case should be **DISMISSED**.

## I.  BACKGROUND

Khalid Awan (Plaintiff), an inmate at the Federal Correctional Institution in Seagoville,

Texas (FCI-Seagoville) when his lawsuit was received on January 12, 2017, brought this action

under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq*., and *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against 19 current and former

employees of the federal Bureau of Prisons (BOP) in their official and individual capacities.  (*See*

doc. 3; doc. 4 at 1-9.)[2] The 13 defendants at FCI-Seagoville include the Warden and former Warden,

two Associate Wardens, the Administrative Remedy Coordinator/Executive Assistant, the Special

Investigative Services Officer, the Supervisory Chaplain, the Assistant Food Service Administrator,

the Unit Manager-Buildings D-54 & 7, the Education Technician, the Unit Counselor-Building C-7,

the former Health Services Administrator, and the former Trust Fund Supervisor. (*See* doc. 4 at 1-9.)

Plaintiff also sued the Central Bureau Director, the Director of the Western Regional Office, the

Director of the Southwestern Central Regional Office, and the Warden, the Associate Warden, and

---

[1]  By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for findings, conclusions, and recommendation.

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

a teacher at the Federal Correctional Institution in Mendota, California (FCI-Mendota). (*Id.*)

On January 19, 2017, it was recommended that Plaintiff's *in forma pauperis* motion be denied, and that this case be summarily dismissed as barred by the "three-strikes" rule of 28 U.S.C. § 1915(g), unless he paid the full $400 filing fee prior to acceptance of the recommendation. (*See* doc. 6.) The recommendation was accepted over Plaintiff's objections, and the case was ultimately dismissed by judgment entered May 1, 2017. (*See* docs. 10, 11, 17, 18.) On March 14, 2018, the Fifth Circuit Court of Appeals vacated the judgment and remanded this case for further proceedings in light of its May 15, 2017 holding in *Brown v. Megg*, 857 F.3d 287, 290-91 (5th Cir. 2017), that a strike does not issue unless all of the claims are dismissed for being frivolous, malicious, or for failing to state a claim. (*See* docs. 22, 23.)

## A.    FCI-Mendota

In his 43-page complaint with approximately 350 pages of attachments, Plaintiff alleges that a teacher at FCI-Mendota interacted with him generally in a derogatory manner, and it was apparent from the teacher's demeanor during searches that he personally disliked Plaintiff, and he conducted pat searches in an inappropriate, brutal, discriminatory, and retaliatory manner that resulted in an injury to Plaintiff's left testicle. Plaintiff had previously filed complaints about the teacher's behavior–both verbally and in writing–to the Associate Warden and another teacher. He also submitted a cop-out[3] regarding the teacher's behavior to the Warden on December 12, 2013, and again on February 21, 2014, following the testicular injury. He subsequently submitted additional complaints to the Warden and the Director of the Western Regional Office regarding the teacher's

---

[3] "A cop-out is also known as an Inmate Request to Staff." *Stanley v. Johnson*, No. 17-CV-304, 2017 WL 9470888, at *1 n.1 (W.D. La. Sept. 12, 2017), *report and recommendation adopted*, No. CV 17-0304, 2018 WL 2308442 (W.D. La. May 21, 2018).

actions.  He claims that because they did not take action, these defendants are guilty of abuse, dereliction of duty, and violating their oaths of office.  (*See id.* at 14-18, 31.)

**B.**    **FCI-Seagoville**

Plaintiff claims that during his transfer to FCI-Seagoville, from February 2015 until he signed his complaint on December 28, 2016, he was denied the proper timing on responses to his grievances to allow for an equitable time in which to file complaints at the next level.  (*See id.* at 18.) The FCI-Seagoville Administrative Remedy Coordinator was allegedly difficult to impossible to contact.  (*See id.* at 18-19.)

After his arrival at FCI-Seagoville on February 24, 2015, Plaintiff had numerous problems with the Unit Counselor-Building C-7, who used disrespectful and foul language in front of or directed at him in violation of the code of employee conduct.  (*See id.* at 25.)

Plaintiff claims that deportable aliens are pretrial detainees who are work exempt, but the Unit Manager-Buildings D-54 & 7 denied him the right to be exempt from work.  He contends that affording the right to be work exempt to only some deportable aliens, but not him, amounts to clear discrimination.  (*See id.* at 23-24.)  He submitted a complaint regarding the denial of his right to be exempt from work detail to the former Warden, who refused to grant him relief.  (*See id.* at 23-24, 27.)

Beginning in April 2015, Plaintiff submitted cop-outs and complaints to the Supervisory Chaplain, the former Trust Fund Supervisor, and the former Warden, regarding the commissary's failure or refusal to purchase and sell Halal-certified foods.[4]  The Supervisory Chaplain contacted the BOP Central Office, and it authorized the commissary to sell Halal-certified foods via Special

---

[4]  The word "Halal" is Arabic for permissible, and Halal food adheres to Islamic law as it is defined in the Koran.  *Cole v. Danberg*, No. 10-088-GMS, 2015 WL 5437083, at *8 n.10 (D. Del. Sept. 14, 2015).

Purchase Order, but the Special Purchase Order had not become available as of the date that Plaintiff filed this suit. According to Plaintiff, the Supervisory Chaplain should have been working with the commissary to ensure compliance with Halal-certified foods, and he claims that the Supervisory Chaplain, the Warden, the Trust Fund Supervisor, and the Assistant Food Service Administrator discriminated against him by denying him access to Halal-certified foods. An Associate Warden's "blithe" attitude toward Plaintiff's right to have Halal-certified food available for purchase also allegedly makes her culpable. (*See id.* at 17, 21, 23, 27-28, 30-31.)

Beginning in July 2015, Plaintiff submitted complaints to the former Warden, the Warden, and the Director of the Southwestern Central Regional Office, regarding his illegal status assignment based on a Security Threat Group (STG) assessment and the information that warranted the assessment. He claims he has a right to accurate sentry file information under 5 U.S.C. § 552(a), correction of incorrect sentry file information, and compensation when incorrect information causes harm. The former Warden allegedly failed to properly investigate Plaintiff's complaint and was negligent in conveying information to him. The Warden subsequently ignored the basis of his complaint by mistakenly responding: "These assignments do not affect custody classification, programming ability, or facility designation." The Director of the Southwestern Central Regional Office failed to research Plaintiff's complaints. (*See id.* at 11-12, 16-17, 25-26.)

Beginning in July 2015, Plaintiff submitted complaints to the former Health Services Administrator, the former Warden, and the Warden, about the excessive heat in his living quarters, and he requested to be moved to an air-conditioned unit due to numerous health problems that are exacerbated by extreme heat. The former Health Services Administrator was in charge of granting a "medical pass" for inmates to reside in an air-conditioned unit, but allegedly failed to fulfill her

duty to assist inmates requiring medical attention.  Plaintiff claims that not affording air-conditioned units to all inmates is discriminatory.  (*See id.* at 12, 29-30.)

Around September 16, 2015, the Education Technician accused Plaintiff of disrespectful speech toward another inmate, and he directed Plaintiff to apologize.  The confrontation occurred in front of other inmates and officers, despite the fact that Plaintiff specifically requested that the conversation be held in private.  (*See id.* at 24.)

On October 26, 2015, Plaintiff submitted a cop-out to the Unit Manager-Buildings D-54 & 7 regarding a transfer to a larger unit.  Plaintiff claims that overcrowding jeopardizes the safe and orderly running of the institution.  (*See id.*)

On October 30, 2015, Plaintiff claims that he was sexually assaulted when another inmate exposed his genitals, but the issue was minimized by prison staff as being a mere "incident." Plaintiff notified the Special Investigative Services Officer, who failed to properly investigate and respond until Plaintiff filed a complaint regarding the failure to investigate. The Warden showed "deliberate indifference" by refusing to investigate his allegations of sexual assault or otherwise respond to his complaints despite the BOP's purported commitment to "Zero Tolerance," and permitted the Administrative Remedy Coordinator/Executive Assistant to wrongfully deny his complaint as untimely. (*See id.* at 9-10, 19-20.)

In February 2016, Plaintiff spoke with one of the Associate Wardens regarding his need for a pastoral phone call over the loss of a family member and was assured that he would get a call, but he did not.  He claims the Supervisory Chaplain either lacked the requisite knowledge to perform his duties, or he deliberately discriminated against Plaintiff.  Plaintiff subsequently submitted complaints to Warden regarding the denial of pastoral care for a phone call following the death of

a family member, the Supervisory Chaplain's cavalier attitude about the death, and his need for a call.  He claims the Associate Warden was disrespectful during a later conversation, presumably because of the complaint.  The Warden responded to the complaint, "Your concern has been forwarded to the appropriate official for consideration and any necessary action." (*See id.* at 13-14, 17-18, 20.)  The Director of the Southwestern Central Regional Office failed to perform at least some of his duties by continually denying Plaintiff's religious rights to pastoral care and dietary needs.  (*See id.* at 16-17.)

In March 23, 2016, Plaintiff sent a cop-out to the Supervisory Chaplain for him to inform the other departments within the prison that Muslims are allowed to be in prayer five times a day, but received no response.  He subsequently submitted a complaint to the Warden regarding the denial of his First Amendment right to exercise his religion.  He claims that the Warden would not allow Muslims to pray together peacefully as a group in the recreation yard, although many other groups were allowed to congregate.  He also claims that he and others were enjoying their evening meal during a holy month of fasting for Muslims on June 16, 2016, when the Assistant Food Services Administrator engaged in a discriminatory diatribe targeted at Muslims.  He submitted complaints about the denial of his right to practice his religion during the incident to the Warden, who failed to adequately look into the incident, and to the Regional Office.  (*See id.* at 12-14, 21-23.)

On or about September 21, 2016, the Education Technician seized several of Plaintiff's administrative remedies and a cop-out dated September 20, 2016, which consisted of exhibits addressed to an Associate Warden, and proceeded to shred these documents, and this prevented Plaintiff from exercising his due process rights. (*See id.* at 25.)

Plaintiff summarily claims that the Administrative Remedy Coordinator/Executive Assistant,

caused due process violations through his dereliction of duty, and that the Unit Counselor - Building C-7 and the Health Services Administrator also violated his Fourteenth Amendment rights. (*See id.* at 37, 39.)

Plaintiff alleges that the defendants were guilty of abuse, dereliction of duty, and violating their oaths of office. (*See id.*) He seeks declaratory judgment, preliminary and permanent injunctive relief, and compensatory damages. (*See id.* at 2, 4-43.)

## II.  PRELIMINARY SCREENING

Because Plaintiff was a prisoner when he filed his complaint, it is subject to preliminary screening under 28 U.S.C. § 1915A.[5] *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Section § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  FEDERAL TORT CLAIMS ACT

Plaintiff appears to sue under the FTCA based on the conduct of government employees.

Through the FTCA, Congress waived the United States' sovereign immunity for claims

---

[5] Section 1915A applies even when a prisoner has paid the required filing fee, as in this case. (*See* doc. 32.)  See *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).

arising from torts committed by federal employees.  28 U.S.C. §§ 1346(b)(1), 2671-2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008); *Johnston v. United States*, 85 F.3d 217, 218 (5th Cir. 1996)("Congress enacted the FTCA as a limited waiver of the sovereign immunity of the United States." ).  To successfully sue under the FTCA, a claim must be: 1) against the United States; 2) for money damages; 3) for injury or loss of property, or personal injury or death; 4) caused by the negligent or wrongful act or omission of any employee of the federal government; 5) while acting within the scope of his or her employment; and 6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred.  28 U.S.C. § 1346(b) (1); *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

## A.    <u>Individual capacity claims</u>

The only proper defendant in an FTCA action is the United States; a claim against a federal agency is not authorized. *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir.1988).  Likewise, individual defendants also cannot be sued under the FTCA in their individual capacities. *Id.* To the extent that Plaintiff seeks to sue the defendants in their individual capacities under the FTCA, he has therefore failed to state a viable FTCA claim against the individual defendants.

## B.    <u>Official capacity claims</u>

To the extent that Plaintiff seeks to sue the individual employees in their official capacities under the FTCA, any claims against them in their official capacities are treated as a suit against the United States. *Connor v. Matthews*, 134 F.Supp.2d 797, 799 (N.D. Tex. 2001). He must therefore exhaust his administrative remedies under the FTCA before filing suit. *See McNeil v. Unites States*, 508 U.S. 106, 112–13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir.1995).  Section 2675(a)

of the FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the FTCA, and absent compliance with this requirement, district courts are without jurisdiction. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989) (per curiam).

Here, Plaintiff has neither alleged nor shown that he has met the jurisdictional prerequisite of exhausting administrative remedies in compliance with § 2675(a) by first presenting his claims to the appropriate federal agency, or that this exhaustion requirement should be excused. He has therefore not met his burden of establishing federal jurisdiction over his tort claims, and they should be dismissed. *See Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir. 1981).

### IV.  *BIVENS*

Plaintiff expressly sues under *Bivens*.  In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court.  *See Bivens*, 403 U.S. at 397.  *Bivens* mirrors but is not "'the substantial equivalent of 42 U.S.C. § 1983.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted).

### A.    Official Capacity Claims

A *Bivens* action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against

9

the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Nor may a *Bivens* action be brought against a federal agency. *Meyer*, 510 U.S. at 484-86; *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995). Claims against federal employees in their official capacities based on alleged constitutional violations are also barred under *Bivens* because they are equivalent to claims against the federal agencies who employ those employees. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). This is because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). To the extent Plaintiff asserts any *Bivens* claims against any individual employee of the United States in an official capacity, those claims should be dismissed.

**B.    Individual Capacity Claims**

As the Fifth Circuit recently noted, the United States Supreme Court has reiterated that "*Bivens* was the product of an '*ancien regime*' that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Abbasi*, 137 S.Ct. at 1855) (quoting in turn *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). *Bivens* claims are now generally relegated to the only three circumstances in which the Supreme Court allowed a private right of action against federal officers for constitutional violations: (1) "manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment," *see Bivens*, 403 U.S. at 389-90; (2) "discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment," *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment," *see Carlson v. Green*, 446 U.S. 14 (1980). *Oliva*, 973 F.3d at 442.

10

To determine whether *Bivens* allows a cause of action, courts must consider: (1) whether a case involves a "new context" that is distinct from these cases, and (2) whether any "special factors" preclude extending *Bivens* to this "new context." *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) (citation omitted). The Supreme Court has recently emphasized that its "understanding of a 'new context' is broad." *Hernandez v. Mesa*, — U.S.—, 140 S.Ct. 735, 743 (2020). Virtually anything other than the circumstances presented in *Bivens*, *Davis*, or *Carlson* is a "new context" precluding the existence of a *Bivens* remedy if special factors counsel against extension. *Oliva*, 973 F.3d at 442 (citing *Abbas*i, 137 S.Ct. at 1865). The Supreme Court has also made clear that extending *Bivens* to new contexts is now a "'disfavored' judicial activity." *Abbasi*, 137 S.Ct. at 1857 (citation omitted).

### 1.    *New Context*

In deciding whether a plaintiff's claim arises in a new context under *Bivens*, the "proper test" is whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S.Ct. at 1859; *see also Cantú*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422) (emphasis in original); *see also Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new

11

context. To be sure, '[n]o one thinks *Davis*—which permitted a congressional employee to sue for

unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth

Amendment's Due Process Clause is fair game in a *Bivens* action.'") (quoting *Cantú*, 933 F.3d at

422). Although it did not "endeavor[] to create an exhaustive list of differences that are meaningful

enough to make a given context a new one," the Supreme Court provided some examples that might

be instructive:

> A case might differ in a meaningful way because the rank of the officers involved; the
> constitutional right at issue; the generality or specificity of the official action; the extent of
> judicial guidance as to how an officer should respond to the problem or emergency to be
> confronted; the statutory or other legal mandate under which the officer was operating; the
> risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the
> presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60.

### a.    First Amendment claims

Liberally construed, Plaintiff's complaint appears to assert the following claims under the

First Amendment: (1) that the FCI-Seagoville Warden condoned and supported, through inaction,

the denial of Plaintiff's full religious prayer rights, his ability to make a pastoral phone call

following the death of a family member, and his right to consume Halal food, as well as the

Assistant Food Service Administrator's discrimination against him (*see* doc. 4 at 35-36); (2) that the

Director of the Southwestern Central Regional Office likewise supported and condoned, through

inaction, the denial of Plaintiff's full religious prayer rights, his ability to make a pastoral phone call

following the death of a family member, and his right to consume Halal food (*see id.*); (3) that the

Associate Warden of FCI-Seagoville condoned and supported the denial of Plaintiff's right to Halal

food (*see id.* at 37); (4) that another Associate Warden of FCI-Seagoville also condoned and

supported the denial of Plaintiff's ability to make a pastoral phone call following the death of a

family member, despite false assurances that Plaintiff would be able to make such a call, wasting his time and forcing him to file a grievance over the issue (*see id.*); (5) that the Supervisory Chaplain of FCI-Seagoville improperly hampered Plaintiff's ability to obtain Halal foods, hampered his ability to engage in prayer five times a day, and displayed a cavalier attitude towards his need to make a pastoral phone call following a family member's death (*see id.* at 13, 17, 20-21, 38); (6) that the Assistant Food Service Administrator of FCI-Seagoville launched into a discriminatory diatribe against Muslims (*see id.* at 38); (7) that the Education Technician of FCI-Seagoville also launched into a discriminatory diatribe (*see id.*); (8) that the former Warden of FCI-Seagoville failed to investigate the FCI-Seagoville Supervisory Chaplain's denial of full religious prayer and Halal food consumption, as well as the denial of Halal food consumption by the FCI-Seagoville Trust Fund Supervisor and Assistant Food Service Administrator (*see id.* at 39); (9) that the FCI-Seagoville Trust Fund Supervisor discriminated against Plaintiff because of his Muslim faith (*id.*); and (10) that the Central Bureau Director of the Federal Bureau of Prisons condoned and supported, by inaction, all unconstitutional acts against Plaintiff (*id.* at 40).

The First Amendment religion clauses provide in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." *Littlefield v. Forney Ind. School Dist.*, 108 F.Supp.2d 681, 703 (N.D. Tex. 2000). The Free Exercise Clause thus protects against "indirect coercion or penalties on the free exercise of religion." *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 450 (1988). The Supreme court has never recognized a First Amendment claim against *federal* jailers, however. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Nor has the Fifth Circuit. *See Begay v. Leap*, NO. 3:17-CV-2639, 2019 WL 1318410, at *3 (N.D. Tex. Feb. 26, 2019), *rep. and rec. adopted*, 2019 WL 1315901 (N.D. Tex.

Mar. 22, 2019).  In fact, the Fifth Circuit quite recently held that a First-Amendment-retaliation claim arose in a new context for purposes of the *Bivens* analysis. *See Watkins v. Three Remedy Coordinators of Bureau of Prisons*, —F.3d—, 2021 WL 2070612, at *2 (5th Cir. May 24, 2021). It also previously remarked  that general First Amendment claims likely arise in a new context for purposes of *Bivens*. *See Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) ("Because the Supreme Court has not recognized a *Bivens* remedy in the First Amendment context, Butt's claim likely presents a new context under *Bivens*."); *Brunson v. Nichols*, 875 F.3d 275, 279 n.3 (5th Cir. 2017) ("[T]he Supreme Court strongly cautioned against extending *Bivens* to new contexts...A First Amendment claim is likely a new context.").

Accordingly, Plaintiff's First Amendment claims present a new context for purposes of *Bivens*. *See Sheldon v. Martha Underwood*, No. 3:19-CV-2041-M-BH, 2021 WL 1110707, at *4 (N.D. Tex. Feb. 22, 2021) ("Accordingly, Plaintiff's First Amendment claims present a new context for purposes of *Bivens*.") (citing *Mattes v. Carvajal*, No. 3:20-cv-1917-B-BN, 2020 WL 5505662, at *5 (N.D. Tex. Aug. 13, 2020)) (finding that the plaintiff's First Amendment claims presented a new context under *Bivens*); *Biron v. Upton*, No. 4:15-CV-205-P, 2020 WL 85146, at *4-5 (N.D. Tex. Jan. 7, 2020) (same).

### b.    Eighth Amendment claims

Plaintiff also appears to raise the following claims sounding in deliberate indifference and/or excessive force under the Eighth Amendment: (1) that the FCI-Seagoville Warden condoned and supported, through a failure to act, the sexual assault of Plaintiff by another inmate, the FCI-Seagoville Special Investigative Services Officer's investigation of the sexual assault, and the housing of Plaintiff in an "overly dangerously [sic]" hot unit (*see* doc. 4 at 35); (2) that the FCI-

14

Seagoville Warden personally refused to investigate Plaintiff's STG status assignment (*see id.* at 36); (3) that the FCI-Mendota Warden condoned and supported, through a failure to act, Plaintiff's assault by a teacher (*see id.* at 36); (4) that the Western Regional Office Direction condoned and supported, through inaction, the FCI-Mendota teacher's harassment and assault of Plaintiff; (5) that the Director of the Southwestern Central Regional Office condoned and supported, through inaction, Plaintiff's STG status assignment (*see id.*); (6) that the FCI-Seagoville Associate Warden condoned and supported the denial of Halal food, confirming his deliberate indifference (*see id.* at 37); (7) that another Associate Warden of FCI-Seagoville also condoned and supported the denial of Plaintiff's ability to make a pastoral phone call following the death of a family member, despite false assurances that Plaintiff would receive such a phone call, confirming his deliberate indifference (*see id.*); (8) that the Associate Warden of FCI-Mendota condoned and supported, through inaction, the teacher's harassment and assault of Plaintiff (*see id.*); (9) that the Special Investigative Services Officer of FCI-Seagoville condoned and supported, through inaction, Plaintiff's sexual assault by another inmate (*see id.*); (10) that the FCI-Seagoville Supervisory Chaplain's "dispicable [sic]" acts confirm deliberate indifference (*see id.* at 38); (11) that the FCI-Seagoville Assistant Food Service Administrator's discriminatory diatribe against Muslims confirms deliberate indifference (*see id.*); (12) that the FCI-Seagoville education technician's diatribe against Plaintiff, as well as her "unlawful distruction [sic] of legal paperwork," show deliberate indifference (*see id.*); (13) that an Associate Warden of FCI-Seagoville's "disrespectful conversation" with Plaintiff shows deliberate indifference (*see id.* at 39); (14) that the former Warden of FCI-Seagoville refused to investigate Plaintiff's STG status and his status as a deportable alien exempt from work (*see id.*); (15)  that unspecified acts of the FCI-Seagoville Health Services Administrator demonstrate deliberate

indifference (*see id.*); (16) that the former FCI-Seagoville Trust Fund Supervisor's discrimination against Plaintiff because of his Muslim faith demonstrates deliberate indifference (*see id.*); (17) that the FCI-Mendota teacher assaulted Plaintiff and committed other hateful discriminatory acts, demonstrating his deliberate indifference (*see id.* at 39-40); and (18) that the Central Bureau Director of the Federal Bureau of Prisons condoned and supported, by his inaction, all unconstitutional acts against Plaintiff, demonstrating deliberate indifference (*see id.* at 40).

The Eighth Amendment prohibits cruel and unusual punishments." *Bucklew v. Precythe*, —U.S.—, 139 S.Ct. 1112, 1123, 203 L.Ed.2d 521 (2019). "Originally it was understood to 'proscribe tortures and other barbarous methods of punishment' but was extended to ban 'punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society' or 'involve the unnecessary and wanton infliction of pain.'" *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)).

As for what the Eighth Amendment requires in the prison context, the "Constitution does not mandate comfortable prisons," but "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and...take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and internal quotation marks omitted). "To prevail on an Eighth Amendment claim, an inmate must establish two elements. First, he must demonstrate that the alleged deprivation was objectively serious, exposing him 'to a substantial risk of serious harm' and resulting 'in the denial of the minimal civilized measures of life's necessities.'" *Arenas*, 922 F.3d at 620 (citing *Farmer*, 511 U.S. at 834) (citations and internal quotation marks omitted); *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001)). Second, the inmate must show that the official possessed "a subjectively culpable state of mind." *Farmer*, 511

U.S. at 846 n.9.

Further, "[i]n evaluating excessive force claims under the Eighth Amendment, the 'core judicial inquiry' is 'whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Hudson*, 503 U.S. at 6-7).

The Supreme Court once allowed an Eighth Amendment deliberate indifference claim to proceed in the *Bivens* context in *Carlson*, but that case concerned inadequate medical treatment. *See Carlson*, 446 U.S. at 16, n.1. Following *Abbasi*, courts have found that Eighth Amendment claims that do not relate to medical treatment arise in a new context for *Bivens* purposes. *See, e.g, Yuhanna A. Sherriff v. Mark Christian*, et al., No. 3:20-cv-0989-E (BH), 2021 WL 1968305, at *7 (N.D. Tex. Apr. 30, 2021), *rep. and rec. adopted*, 2021 WL 19866876 (N.D. Tex. May 17, 2021) (finding that the plaintiff's Eighth Amendment deliberate indifference claim related to asbestos exposure arose in a new context for *Bivens* purposes ); *see also Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 5322338 (N.D. Tex. Feb. 3, 2020) (finding that the plaintiff's Eighth Amendment failure-to-protect claim arose in a new context for purposes of *Bivens* and noting that "*Carlson* had only recognized an implied damages remedy under the Eighth Amendment for 'failure to provide medical treatment'"); *Anthony Mammana v. Lieutenant Barben John Does (1-10)*, —F. App'x—, 2021 WL 2026847, at *3 (3rd Cir. May 21, 2021) (finding that plaintiff's Eighth Amendment deliberate indifference claim challenging his conditions of confinement and noting that "little links *Carlson* to Mammana's clams beyond federal prison employees and alleged Eighth Amendment violations"); *Schwarz v. Meinberg*, 761 F.App'x 732, 734 (9th Cir. 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new Bivens context because Schwarz does not allege

a failure to treat a serious medical condition, which was the issue in Carlson...Rather the basis of Schwarz's claim–a nonfunctioning toilet–resembles the conditions of the confinement claim the Supreme Court rejected in *Abbasi*."); *Hoffman v. Preston*, No. 1:16-cv-01617-LJO-SAB (PC), 2019 WL 5188927, at *5 (E.D. Cal. Oct. 15, 2019), *rep. and rec. adopted*, 2020 WL 58029 (E.D. Cal. Jan. 6, 2020) ("In this case, Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth Amendment claim in *Carlson* because Plaintiff's claim arises out of allegations that a correctional officer offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, not failure to provide medical care. Therefore, Plaintiff's Eighth Amendment failure to protect claim accordingly arises in a new Bivens context.").

Here, because they do not involve the failure to provide medical care, Plaintiff's Eighth Amendment claims also arise in a new context for *Bivens* purposes. Consideration of whether any "special factors" counsel hesitation in recognizing a new judicial remedy is therefore required.

### 2. *Special Factors Analysis*

"When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether 'special factors' counsel against inferring such a cause of action in the absence of 'affirmative action by Congress' to create one.'" *Dudley*, 2020 WL 532338, at *6 (quoting *Abbasi*, 137 S.Ct. at 1857). This "inquiry must concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858. "[I]f there is an alternative remedial structure present in a certain case," the existence of that process "alone

18

may limit the power of the judiciary to infer a new *Bivens* cause of action." *Id.*

Here, special factors counsel against extending *Bivens* to Plaintiff's claims. Congress has already legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997(e)). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* "*Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to do so." *Dudley*, 2020 WL 532228, at *7; *see also Watkins*, 2021 WL 2070612, at *3 (finding special factors counseled against extending *Bivens* to First-Amendment retaliation claim, noting that "[t]he Prison Litigation Act, which governs lawsuits brought by prisoners, 'does not provide for a standalone damages remedy against federal jailors...' [s]o out of respect for Congress and the longstanding principle of separation-of-powers, we cannot imply such a remedy in this case") (internal citation omitted).

Courts considering the extension of *Bivens* to new areas in the prison context have also noted that the "administration of the federal prison system" is a special factor counseling hesitation against such expansion. *See Nabaya v. Bureau of Prisons*, 3:19-CV-215-L-BN, 2020 WL 7029909, at *5 (N.D. Tex. Oct. 7, 2020), *rep. and rec. adopted* 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020); *see also Retzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration.") (citing *Abbasi*, 137 S. Ct. at 1857-58); *Callahan v. Fed. Bureau of Prisons*, 956

F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'") (quoting *Abbasi*, 137 S. Ct. at 1865) (citations omitted).

In addition, an alternative remedial process exists for Plaintiff, i.e., the Federal Bureau of Prisons' Administrative Remedy Program. "Under this program, prisoners can file grievances about any aspect of their confinement, the agency must provide written responses in specified time frames, and prisoners may appeal institutional-level responses to the agency's regional and central offices." *Dudley*, 2020 WL 532338, at *8 (citing 28 C.F.R. §§ 542.10-19 (2017)). Since *Abbasi*, numerous courts have recognized the Federal Bureau of Prisons' Administrative Remedy Program as an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See, e.g., Dudley*, 2020 WL 532338, at *7; *Begay* , 2019 WL 1318410, at *3 ("[S]everal courts have explicitly recognized the administrative remedy program ('ARP') available in the prison setting as an alternative process foreclosing a personal-capacity damages remedy.") (quoting *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018), *rep. and rec. adopted*, 2019 WL 545479 (W.D. La. Feb. 11, 2019)).

Because Plaintiff's *Bivens* claims involve a new context under *Abbasi*, and because special factors exist counseling against the extension of *Bivens* to such claims, his claims should be dismissed with prejudice.[6]

---

[6] Though Plaintiff's claims focus on the First and Eighth Amendments, he also sporadically references due process. For example, he claims that the FCI-Seagoville education technician confiscated and shredded his legal documents, depriving him of due process. (*See* doc. 4 at 25, 38). To the extent Plaintiff asserts any claims pursuant to the Fifth Amendment's due process clause or  equal protection component (for example, that he was discriminated against for being Muslim), such claims arise in a new context for *Bivens* purposes and, for the reasons discussed, special factors counsel against extending the *Bivens* remedy to such claims. *See Brown v. Brown*, Civil Action No. 3:16-CV-830-DPJ-FKB, 2019 WL

## V. INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff moves for a preliminary and permanent injunction. (*See* doc. 4 at 40.) He seeks a preliminary injunction to prevent staff retaliation against him for the filing of this lawsuit. (*See id.*) He also seeks a permanent injunction to prevent later staff retaliation and additional pain and suffering from deliberate actions taken by the institution. (*See id.*). He also seeks a number of other actions against Defendants, including to "fire" an FCI-Mendota teacher for his assault on him and to "sanction" other Defendants for their deliberate indifference and inaction. (*See id.* at 41). Plaintiff also asks for "[a] declaration that the actions committed (and permitted to be committed)" violate his constitutional rights. **(***Id.* at 40).

> A court may grant injunctive relief when the movant establishes the following: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572-73 (5th Cir. 1974) (en banc)). The movant bears the burden of proving each of the four elements before injunctive relief can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).

Here, Plaintiff is no longer incarcerated in the BOP, and he now resides in Ontario, Canada. (*See* doc. 29.) Because he is no longer in the United States and is no longer incarcerated in the BOP, his requests for injunctive and declaratory relief related to his time in the BOP are moot and may

---

12036330, at *4 (S.D. Miss. March 7, 2019), *affirmed* 842 F.App'x 948 (5th Cir. 2021) (finding that a prisoner's purported *Bivens* action for a "Fifth Amendment equal-protection claim that can best be described as asserting disparate treatment based on religion in the prison-employment setting" arose in a new setting and differed from *Davis*, in part, because it involved discrimination on the basis of religion, not gender); *Louis-El v. Ebbert*, 448 F.Supp.3d 428, 439-40 (M.D. Penn. 2020) (finding that a prisoner's Fifth Amendment Due Process violation for the withholding of prisoner property arose in a new context for *Bivens* purposes).

be denied on that basis. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (finding that

inmate's transfer to another facility rendered his claims for injunctive and declaratory relief moot)

(citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991)); *Walters v.*

*Livingston*, 642 F.App'x 416, 418 (5th Cir. 2016) (per curiam) (affirming dismissal of prisoner's

freedom-of-religion claims as proper because inmate's claims became moot upon his release from

prison); *Busick v. Neal*, 380 F.App'x 392, 398 (5th Cir. 2010) (per curiam) (holding that plaintiff's

claims seeking declaratory and injunctive relief on the basis that the was denied his right to religious

freedom at the jail were rendered moot by his transfer from the jail); *Edward v. Johnson*, 209 F.3d

772, 776 (5th Cir. 2000) (affirming dismissal of claims seeking injunctive relief when inmate was

no longer housed at complained-of facility).

## VI.  RECOMMENDATION

Plaintiff's official capacity claims under the Federal Tort Claims Act should be dismissed

without prejudice for failure to exhaust administrative remedies.  All remaining claims should be

summarily **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b).

**SIGNED this 1st day of June, 2021.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

22

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE